UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SERGIO ESCARENO, | |
| Plaintiff, | NO. CV-06-5005-EFS |
| v. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| C/O BANGS, | |
| Defendant. | |

Before the Court, without oral argument, is Defendant Corrections Officer ("CO") Glen Bangs' Motion for Summary Judgment. (Ct. Rec. 26.) After reviewing the submitted material and relevant authority, the Court is fully informed and grants Defendant's motion. The reason for the Court's Order are set forth below.

## I. Background

**A. Introduction**

In a motion for summary judgment, the facts are set forth in a light most favorable to the nonmoving party - here, that is Plaintiff. *Leslie v. Grupo ICA,* 198 F.3d 1152, 1158 (9th Cir. 1999). While Plaintiff did not file a response to Defendant's Motion for Summary Judgment

ORDER * 1

1  (Ct. Rec. 26), he did file a verified Complaint  (Ct. Rec. 11).  A
2  verified complaint may be used as an opposing affidavit under Federal
3  Rule of Civil Procedure 56 if it is based on personal knowledge and sets
4  forth specific facts admissible in evidence.  *Schroeder v. McDonald,* 55
5  F.3d 454, 460 (9th Cir. 1995) (citations omitted).  A pleading counts as
6  "verified" if the drafter states under penalty of perjury that the
7  contents are true and correct.  *Id.*
8      Here, Plaintiff's verified Complaint constitutes an opposing
9  affidavit because it is based on his personal knowledge.  *See Columbia*
10 *Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.,* 944 F.2d
11 1525, 1529 (9th Cir. 1991) (rejecting an affidavit because it was "not
12 based on personal knowledge, but on information and belief"), *aff'd,* 508
13 U.S. 49 (1993).  Thus, the following factual background is based on
14 Plaintiff's verified Complaint (Ct. Rec. 11) and Defendant's undisputed
15 Statement of Material Facts (Ct. Rec. 33).
16 **B. Facts**
17     On January 20, 2005, Plaintiff was an inmate in the Yakima County
18 Jail and was scheduled to appear in Yakima County Superior Court at
19 1:30 p.m.[1]  (Ct. Rec. 33 at 1-2.)  Defendant is a Yakima County

---

[1] Plaintiff's verified Complaint states that the alleged incident occurred on January 10, 2005, not January 20, 2005. (Ct. Rec. 11 at 3.) However, Defendant's incident report (Ct. Rec. 30 at 6), CO Andrew Martin's incident report (Ct. Rec. 31 at 5), and Yakima County Jail Nurse Michael Rosencrance's medical report (Ct. Rec. 32 at 3) all state the alleged incident occurred on January 20, 2005.  Taking this evidence into

ORDER \* 2

1 Department of Corrections Officer and was responsible for escorting
2 Plaintiff to Superior Court. (Ct. Rec. 30 at 1.) At approximately 1:15
3 p.m., Defendant accompanied Plaintiff to Yakima County Jail's booking
4 area; Defendant left Plaintiff in the seating area while he checked in
5 at the inmate transport office. *Id.* at 2.

6 While Defendant was away, Plaintiff informed CO Martin, who was
7 assigned to the booking area, that he needed to use the restroom.
8 (Ct. Rec. 31 at 2.) The booking area restroom was occupied, so CO Martin
9 escorted Plaintiff to the dress out room restroom; the dress out room is
10 where inmates change between street clothes and inmate uniforms. *Id*.

11 When Defendant entered the dress out room, Plaintiff informed
12 Defendant that he needed additional toilet paper. (Ct. Rec. 30 at 2.)
13 Defendant inspected the toilet paper roll and found it was only partially
14 used; he then instructed Plaintiff to use the current toilet paper and,
15 if it ran out, he would provide more. *Id.* at 2-3. Plaintiff became
16 hostile and said, "Fuck you. I need it now." *Id.* at 3.

17 Defendant began to close the dress out room door so Plaintiff could
18 use the restroom. *Id.* As he closed the door, Plaintiff threw the
19 partially used toilet paper roll at Defendant - the toilet paper roll
20 missed Defendant and landed outside the dress out room. *Id.* Defendant

---

account, the Court finds that the alleged incident occurred on January
20, 2005. *See Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007) ("When
opposing parties tell two different stories, one of which is blatantly
contradicted by the record, so that no reasonable jury could believe it,
a court should adopt that version of the facts for purposes of ruling on
a motion for summary judgment.").

ORDER * 3

closed the door to the dress out room and started walking away. *Id.* Plaintiff began yelling and pounding on the door; the noise was loud enough that Defendant thought Plaintiff may have injured himself. *Id.*

Defendant returned and opened the dress out room door to find Plaintiff within arm's reach; Plaintiff was agitated, yelling obscenities, had his hands up, and was in an aggressive stance. *Id.* Plaintiff appeared threatening to Defendant. *Id.*

Defendant grabbed Plaintiff by his uniform with both hands and threw him against the wall with his right forearm across Plaintiff's chest. (Ct. Rec. 11 at 3; Ct. Rec. 30 at 4.)  Defendant hit Plaintiff on his chest with his fist and instructed him to "cool it."  (Ct. Rec. 11 at 3; Ct. Rec. 31 at 3.)  Defendant then ordered Plaintiff to remove the clothing he was not permitted to have, and asked him whether he needed to use the restroom or just wanted to go to court.  (Ct. Rec. 30 at 4.) Plaintiff asked to be taken to court.  *Id.*

In the courtroom, Plaintiff informed his attorney that Defendant *as*saulted him.  (Ct. Rec. 11 at 3.)  Plaintiff's attorney inspected his chest and observed it was bruised.  *Id.*  At his request, Defendant was examined by Nurse Rosencrance at approximately 4:20 p.m. that same day. (Ct. Rec. 32 at 2.)  Nurse Rosencrance noted no bruising, no bleeding, and no injuries other than two small slightly red abrasions on Defendant's right chest.  *Id.* at 3.

On January 9, 2006, Plaintiff filed a Civil Rights Complaint. (Ct. Rec. 1.)  In an Order on March 31, 2006, the Court directed Plaintiff to amend his Complaint or file a voluntary dismissal. (Ct. Rec. 8.)  Plaintiff signed a First Amended Civil Rights Complaint

ORDER * 4

on June 26, 2006; this Complaint was subsequently filed on July 3, 2006. (Ct. Rec. 11.)

## II. Discussion

**A. Standards of Review**

   **1. Summary Judgment**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott,* 127 S. Ct. at 1776 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

### 2. Qualified Immunity

The doctrine of qualified immunity protects government officials from litigation associated with their official duties. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Government official who are performing discretionary functions as part of their official duties are entitled to qualified immunity unless their actions violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity's existence generally turns on the objective reasonableness of the actions, without regard to the particular official's knowledge or subjective intent. *Id.* at 819. Even where material facts are in dispute as to the official's conduct, whether a reasonable official could have believed his or her conduct was proper is a question of law for the court and should be determined at the earliest possible point in litigation. *ActUp! Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993).

In analyzing a qualified immunity defense, the Court must determine: 1) whether a constitutional right has been violated on the facts alleged,

ORDER * 6

taken in the light most favorable to the party asserting the injury; and 2) whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 205 (1994); *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1061 (9th Cir. 2006).  In the second step, the court decides if the official made a reasonable mistake about what the law requires. *Kennedy*, 439 F.3d at 1055; *see also Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995) (where the law is clearly established, the burden is on the defendant to prove that his or her actions were nonetheless reasonable).

**B. Constitutional Violation - Excessive Force**

Defendant argues that he did not use excessive force when he threw Plaintiff against the dress out room wall. (Ct. Rec. 28 at 4.) Plaintiff filed no response.

The Fourteenth Amendment Due Process Clause provides the proper analysis for claims that prison officials used excessive force against pretrial detainees. *Graham v. Connor,* 490 U.S. 386, 395 n.10 (1989) ("It is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."). The Ninth Circuit laid out a four-factor test for determining whether a prison official's use of force was excessive, and therefore a due process violation. *White v. Roper,* 901 F.2d 1501, 1507 (1990). The four factors are (1) the need for the application of force, (2) the relationship between the need and the amount of force that was used, (3) the extent of the injury inflicted, and (4) whether force was applied in a good faith effort to maintain and restore discipline. *Id.*

Here, Defendant's "Summary of Argument" raises two issues: 1) Defendant did not use excessive force and 2) he is protected by qualified immunity. (Ct. Rec. 28 at 2.) Despite raising two issues, Defendant's "Argument" only contains a qualified immunity section. Issues raised in a brief that are not supported by argument are deemed abandoned. *United States v. Williamson,* 439 F.3d 1125, 1138 (9th Cir. 2006) (citations omitted). It appears Defendant either abandoned the excessive force argument or merged it with the qualified immunity section.

Assuming the latter, Defendant's conduct did not violate Plaintiff's constitutional rights. Under *White's* first factor, the need for force was apparent - Plaintiff appeared threatening to Defendant because he was kicking or pounding the dress out room door, yelling obscenities, had his arms above his head, and was positioned aggressively within arm's reach of Defendant.

Under *White's* second factor, the relationship between the need and the amount of force that was used was proportional. Defendant restrained Plaintiff by throwing him against the dress out room wall, hitting Plaintiff once on the chest with his fist, and holding him against the wall by placing his right forearm across Plaintiff's chest. Defendant did not repeatedly strike Plaintiff, throw him to the ground, or take any other physical action other than that described above; he only instructed Plaintiff to "cool it."

Under *White's* third factor, Plaintiff's injuries were minimal. Nurse Rosencrance examined Plaintiff approximately three hours after the incident and noted no injuries other than two small slightly red

abrasions on Defendant's right chest. Defendant was not bleeding, had no bruising, and never lost consciousness. Plaintiff's minor injuries are insufficient to demonstrate that Defendant used excessive force. *White,* 901 F.2d at 1507 (finding that the plaintiff's cut wrist, bruising, and maintained consciousness were insufficient to demonstrate excessive or brutal force).

Under *White's* fourth factor, Defendant's force was applied in a good faith effort to maintain and restore discipline. Plaintiff was physically aggressive and appeared threatening to Defendant. Besides throwing Plaintiff against the dress out room wall and hitting his chest, Defendant took no further physical action against Plaintiff; he only ordered Plaintiff to remove the clothing he was not permitted to wear, asked if Plaintiff still needed to use the restroom, and then escorted him to Superior Court.

After applying *White's* four-factor test to the facts at hand, Defendant is entitled to summary judgment because his conduct did not violate Plaintiff's constitutional rights and Plaintiff has not come forward with specific facts showing that there is a *genuine* issue for trial.

**C. Clearly Established Right**

Plaintiff cannot clear the first *Saucier* hurdle because he failed to establish a deprivation of his Fourteenth Amendment right to be free from the use of excessive force. 533 U.S. at 201. Assuming arguendo that Defendant's actions violated Plaintiff's constitutional rights, *Saucier's* second step is to determine whether that right was clearly established at the time of the alleged violation. *Id.* A right is

clearly established when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Camarillo v. McCarthy,* 998 F.3d 638, 640 (9th Cir. 2003) (citing *Anderson v. Creighton,* 483 U.S. 635 (1987)) (internal quotations omitted).

Here, while Plaintiff's Fourteenth Amendment right to be free of punishment is clearly established, the contours are such that a reasonable correction officer would be hard-pressed to understand that hitting an aggressive detainee once in the chest and holding him against a wall to prevent him from either harming himself or others clearly violates that constitutional right. The qualified immunity inquiry is deferential to the government official; "[t]he scenario may look different when gauged against the '20/20 vision of hindsight,' but [a court] must look at the situation as a reasonable officer in the [correction officer's] position could have perceived it." *Marquez v. Gutierrez,* 322 F.3d 689, 693 (9th Cir. 2003).

The evidence is undisputed that Plaintiff 1) threw a partially used toilet paper roll at Defendant, 2) began kicking and pounding on the dress out room door, 3) was yelling obscenities, 4) was within arm's reach and had his hands up in an aggressive stance when Defendant opened the dress out room door, and 5) appeared threatening to Defendant. Defendant did hit Plaintiff in the chest with his fist. But there is no evidence that Plaintiff expressed he was being hurt or that he suffered from any injuries other than two small slightly red chest abrasions. Thus, even if Defendant's actions amounted to excessive force that was

punishment, it was a reasonable mistake in light of the information available to him. Defendant is entitled to qualified immunity.

### III. Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 26)** is **GRANTED**;

2. Judgment is to be entered in Defendant's favor; and

3. This case shall be closed.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this Order and to provide copies to counsel and Plaintiff.

**DATED** this 4th day of December, 2007.

        S/ Edward F. Shea
        EDWARD F. SHEA
        United States District Judge

Q:\Civil\2006\5005.MSJ.wpd

ORDER * 11